

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARDY, ET AL., | |
| | Plaintiffs, |
| -against- | |
| KASZYCKI & SONS, ET AL., | |
| | Defendants. |

83-cv-6346 (LAP)

Memorandum & Order

Loretta A. Preska, Senior United States District Judge:

Before the Court is a request by non-parties Time Inc. and the Reporters Committee for Freedom of the Press ("Movants") to unseal certain documents relating to the settlement of this case. (See Letter from Andrew Lachow, July 12, 2016, ECF No. 415). Donald J. Trump, the Trump Organization, and Trump-Equitable Fifth Avenue Company (the "Trump Parties") filed a letter in opposition. (Letter from Lawrence Rosen, Aug. 12, 2016, ECF No. 420).

On August 26, 2016, the Court denied Movants' request. (Order, Aug. 26, 2016, ECF No. 425)(Griesa, J.). Movants subsequently appealed. On July 6, 2017, the Court of Appeals vacated the Order and remanded the case, instructing the Court to balance the presumption of public access to courts under the common law and First Amendment against countervailing interests. (Mandate, July 6, 2017, ECF No. 430).

1

On June 29, 2017, Lewis M. Steel, one of the lawyers who had represented the plaintiffs, filed a letter indicating that Wendy Sloan had retained two of the documents that Movants seek to unseal, which both the Court and Court of Appeals had presumed to be lost. (Letter from Lewis M. Steel, June 29, 2017, ECF No. 429). Movants and the Trump Parties subsequently filed supplemental letters. (Movant's Letter, Aug. 22, 2017, ECF No. 436; Trump Parties' Letter, Aug. 22, 2017, ECF No. 437).

For reasons explained below, the Court finds that the Trump Parties have failed to identify any interests that can overcome the common law and First Amendment presumptions of access to the four documents at issue.

I.   Background

As the Court of Appeals explained, (Mandate at 3), in 1983, a member of the demolition-workers union filed a class action against various parties involved in demolishing the Bonwit Teller building, which was torn down to build Trump Tower.  The class members settled with the various defendants in 1998, and the Court sealed four documents connected to that settlement: (1) a transcript of an October 26, 1998 conference (ECF No. 409) (the "Settlement Transcript"); (2) a plaintiffs' brief filed on November 9, 1998, (ECF No. 410); (3) a district court order approving the settlement dated December 30, 1998, (ECF No. 411);

and (4) an amended district court order approving the settlement dated February 9, 1999 (ECF No. 412).   (Id. at 3-4).

II.   Presumption of Access

There are "two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law."   Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 163 (2d Cir. 2013).   The Court of Appeals determined that the presumption of access applies to the two court orders under both the common law and the First Amendment.   (Mandate at 5-6). However, the Court of Appeals did not address the Settlement Transcript or plaintiffs' brief, records of which were discovered only after the Mandate was issued.   A discussion of these two documents follows.

a. Common Law Presumption of Access

The common law presumption of access attaches to all "judicial documents."   Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006).   The Court of Appeals has defined "judicial documents" as documents that are "relevant to the performance of the judicial function and useful in the judicial process."   United States v. Amodeo, 44 F.3d 141, 145 (2d. Cir. 1995)("Amodeo I")).   In determining whether a document is a judicial document, a court must evaluate "the degree of judicial reliance on the document in question and the relevance of the

3

document's specific contents to the nature of the proceeding"
and "whether access to the [document] would materially assist
the public in understanding the issues before the . . . court,
and in evaluating the fairness and integrity of the court's
proceedings."  Newsday, 730 F.3d at 166-67.

The Court notes that Hardy was a class action subject to
Federal Rule of Civil Procedure 23(e).  Rule 23(e) requires the
district court's approval before "[t]he claims, issues, or
defenses of [the] certified class" can be settled.  Fed. R. Civ.
P. 23(e).  Furthermore, "[t]he parties seeking approval must
file a statement identifying any agreement made in connection
with the [settlement] proposal," and "[i]f the [proposed
settlement] would bind class members, the court may approve it
only after a hearing and on finding that it is fair, reasonable,
and adequate."  Id. at 23(e)(2)-(3).  Accordingly, Rule 23(e)
requires judicial approval of class action settlements and
requires the district court to evaluate substantively the terms
and to "be satisfied of the fairness" of any settlement proposal
before approving it.  Janus Films, Inc. v. Miller, 801 F.2d 578,
582 (2d Cir. 1986).

The hearing contemplated by Rule 23(e) occurred on October
26, 1998, and is reflected in the Settlement Transcript.
Shortly thereafter, in early November 1998, the class plaintiffs
filed a brief arguing that the settlement should be approved.

4

The district court later approved the settlement in the two
orders at issue.  In other words, the Settlement Transcript and
the plaintiffs' brief reflect the information and arguments the
parties presented to the district court in order to persuade it
to approve the proposed settlement of the claims in the
certified class pursuant to Rule 23(e).

A district court's approval of a class action settlement
pursuant to Rule 23(e) is a quintessential exercise of judicial
power.  See In re September 11 Litig., 723 F. Supp. 2d 526, 532-
33 (S.D.N.Y. 2010)(stating that a motion for approval of a
settlement "invokes [the court's] Article III power").  "Any
document reflecting the terms of the settlement and submitted to
the Court is a 'judicial document' to which the presumption of
access likely applies." Xue Lian Lin v. Comprehensive Health
Mgmt., Inc., 2009 WL 2223063, at *1 (S.D.N.Y. July 23,
2009)(citing Lugosch, 435 F.3d at 119-20).  Moreover,
"[d]ocuments created by or at the behest of counsel and
presented to a court in order to sway a judicial decision are
judicial documents that trigger the presumption of public
access." Schiller v. City of New York, 2006 WL 2788256, at *5
(S.D.N.Y. Sept. 27, 2006).  Accordingly, the Settlement
Transcript and the plaintiffs' brief are "relevant to the
performance of the judicial function and useful in the judicial

process" and are therefore subject to the common law presumption
of access. Amodeo I, 44 F.3d at 145.

        i. Common Law Weight of the Presumption Analysis

Once a district court has determined that the common law
presumption of access attaches, it must determine the weight of
the presumption. Lugosch, 435 F.3d at 119.  The Court of
Appeals held that the strength of the common law presumption of
public access as it applies to the two court orders is
"middling." (Mandate at 5).  The Court of Appeals reasoned that
the two documents are closely tied to the exercise of judicial
power, but that "the very strongest presumption is reserved in
civil cases for documents 'used to determine litigants'
substantive legal rights.'" (Id.)(quoting Bernstein v.
Bernstein Litowitz Berger & Grossman LLP, 814 F.3d 132, 142 (2d
Cir. 2016)).

With respect to the Settlement Transcript and plaintiffs'
brief, the Bernstein Court further explained that "[t]he locus
of the inquiry is, in essence, whether the document is presented
to the court to invoke its powers or affect its decisions."
Bernstein, 814 F.3 at 142 (internal citation and quotation
omitted).  Applying this standard, the Court finds that the
Settlement Transcript and plaintiffs' brief are entitled to a
strong presumption of access.  The documents directly invoke --
or provide a record of the parties' arguments to invoke -- the

district court's exercise of its Article III power: namely, the approval of a class action settlement pursuant to Rule 23(e). See United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")(stating that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.").

In addition, the weight of the presumption is further strengthened by the public's interest in obtaining access to records from a class action lawsuit to which the now-President of the United States was a party.  See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP, 814 F.3d 132, 143 (2d Cir. 2016)(considering the public's interest in the subject matter of a civil complaint in determining weight of the presumption of access).  The President's involvement in the Hardy litigation is of legitimate interest to the public, and the Court's determination of the weight of the presumption of access may not ignore this "broader context."  Lugosch, 435 F.3d at 113, 123 n.5 (rejecting district court's conclusion that public interest in a "dispute among business partners" did not add weight to presumption of access, noting the "broader context" of the case, i.e., that defendants were "lobbying the state legislature and the governor to obtain preferred treatment in connection with a

business endeavor that [was] similar to those at issue in this case."). Accordingly, the Court finds that the weight of the presumption in favor of access to the Settlement Transcript and plaintiffs' brief is particularly strong.

The Trump Parties rely on Gambale v. Deutsche Bank AG, 377 F.3d 133, 143-144, 145 n.8 (2d Cir. 2004), for the proposition that settlement information disclosed during "a relatively informal conference" and made based on the court's "assurances of confidentiality" created only a "weak" presumption of access. (Trump Parties' Letter at 2). But in that case, the parties entered into a settlement agreement that was not made "part of the court record." Gambale, 377 F.3d at 143. Further, the settlement documents "were not filed with the court and were not the basis for the court's adjudication." Id. Nevertheless, at a conference, the trial court "insisted on learning the settlement amount," which one of the parties then disclosed "based on what it may have thought were assurances of confidentiality." The Court of Appeals held:

> [T]he presumption [of access] . . . was a weak one
> under these circumstances: The amount of the
> settlement was confidential, the parties articulated
> the reasons for such confidentiality, and the amount
> made its way into the transcript only in response to
> the court's apparently casual questioning of counsel
> in the course of proceedings addressing the
> settlement, not the adjudication, of litigation.

Id.  Here, by contrast, documents reflecting the terms and
conditions of the settlement were made part of the court record
because the district court was required to review and approve
the settlement terms under Rule 23(e).  In addition, based on
the Court's review of the Settlement Transcript, the parties did
not articulate the reasons for confidentiality.  Accordingly,
Gambale is inapposite in determining the weight of the common
law presumption of access.

      b. First Amendment Presumption of Access

     The First Amendment presumption of access applies to
"particular types of judicial documents."  Hartford Courant Co.
v. Pellegrino, 380 F.3d 83, 91 (2d Cir. 2004)("Pellegrino").
The Court of Appeals has "articulated two different approaches
for determining whether" the constitutional presumption applies.
Lugosch, 435 F.3d at 120.  The first approach -- the "experience
and logic" test -- looks to "whether the documents 'have
historically been open to the press and general public' and
whether 'public access plays a significant positive role in the
functioning of the particular process in question.'"  Id. at 120
(quoting Pellegrino, 380 F.3d at 92).  "The second approach
considers the extent to which the judicial documents are
'derived from or [are] a necessary corollary of the capacity to
attend the relevant proceedings.'"  Id. (quoting Pellegrino, 380
F.3d at 93).

i. Experience and Logic Test

With respect to the "experience and logic test," the Settlement Transcript and plaintiffs' brief satisfy the experience prong because they are judicial records subject to the common law presumption of access. See Pellegrino, 380 F.3d at 92 (noting that courts "have generally invoked the common law right of access to judicial documents in support of finding a history of openness"). As for the logic prong, access to the Settlement Transcript and plaintiffs' brief "plays a significant positive role" in monitoring judicial approval of the class action settlement because the documents contain the terms of the proposed settlement, as well as the arguments presented to the district court in seeking its approval. Id. Members of the public are not able to evaluate a court's decision to approve a settlement without knowing its terms and the arguments presented to support it. See In re September 11 Litig., 723 F. Supp. 2d at 531 (holding that First Amendment and common law presumptions of access apply to information contained in a motion to approve a settlement and explaining that the sealed information was "central to the parties' settlement and [the court's] decision on their motion for approval."). Accordingly, the logic prong is satisfied, and the Court finds that the constitutional presumption applies to the Settlement Transcript and plaintiffs' brief under the experience and logic test.

ii.   Necessary Corollary Test

The First Amendment presumption of access also applies to the Settlement Transcript under the necessary corollary test. As noted above, Rule 23(e) requires a "hearing" prior to the judicial approval of a class action settlement.  The Court of Appeals has instructed that before a class action settlement "can result in judicial ratification or rejection, there must be a proceeding in open court, and the document sought to be acted upon by the judicial power will be placed on file and must become a public record."  United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 857 (2d Cir. 1998)(emphasis added).  Accordingly, the public has a presumption of access under the First Amendment to the Settlement Transcript that is derived from the public's capacity to attend the October 26, 1998 proceeding.  See Lugosch, 435 F.3d at 120.

II.  First Amendment Balancing

Because the Court has determined that the "more stringent" First Amendment analysis applies, continued sealing of the documents must be supported by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124.  "Broad and general findings by the trial court, however, are not sufficient to justify closure." In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987).

Courts have found that cases in which disclosure would "reveal
details of an ongoing investigation, pose a risk to witnesses,
endanger national security, or reveal trade secrets" may
constitute an interest that warrants sealing. Bernstein, 814
F.3d at 143.  However, the Trump Parties have not contended that
any such interest exists in this case.

Rather, the Trump Parties argue that the "higher values"
that would be protected through continued sealing of the
documents at issue include (1) the general interest in
maintaining settlement agreements and (2) the parties' reliance
on the fact that the settlement agreement would not be made
public.  (Trump Parties' Letter at 2).

However, a general interest in promoting the settlement of
cases does not justify sealing judicial records under the First
Amendment.  See In re September 11 Litig., 723 F. Supp. 2d at
532-33 ("The interest in furthering settlement does not outweigh
the strong common law and constitutional presumptions of public
access that attaches to information bearing directly on my
adjudication.").  Furthermore, the Court of Appeals for the
Third Circuit has noted that the "generalized interest in
encouraging settlements does not rise to the level of interests
that we have recognized may outweigh the public's common law
right of access," see Bank of Amer. Nat'l Trust & Savings Ass'n

v. Hotel Rittenhouse Assocs., 800 F.2d 339, 346 (3d Cir. 1986),
much less the more demanding First Amendment right of access.

The Trump Parties rely on Schoeps v. Museum of Modern Art
to argue that promoting settlement agreements overcomes the
presumption of access on the basis of the Court's explanation
that the "Second Circuit strongly endorses the confidentiality
of settlement agreements in virtually all cases."  603 F. Supp.
2d 673, 676 (S.D.N.Y. 2009).  However, Schoeps itself relied
principally on Glens Falls Newspapers, Inc., a case that
concerned only preliminary settlement materials with respect to
which "'the presumption of public access . . . is very low or
nonexistent under either constitutional or common law
principles.'"  160 F.3d at 855 (quoting opinion of the district
court).  The Court of Appeals noted that "access to settlement
discussions and documents has no value to those monitoring the
exercise of Article III judicial power by the federal courts
. . . [because] [t]he judge cannot act upon these discussions or
documents until they are final."  Id. at 857.  However, while
draft settlement materials were to remain under seal, the final
settlement would be subject to "a proceeding in open court, and
the document sought to be acted upon by the judicial power will
be placed on file and must become a public record."  Id.

Here, the documents at issue are not incidental settlement
discussions but rather were relied upon by the Court in the

exercise of its Article III powers.  Accordingly, the Trump

Parties' reliance on Schoeps and Glens Falls Newspapers, Inc. is

misplaced.

The Trump Parties also claim that their "reliance" on the

fact that the settlement terms and agreement would not be made

public is a higher value sufficient to defeat the right of

access, because it "gave the parties a level of certainty and

confidence that the settlement would remain confidential in

virtual perpetuity."  (Trump Parties' Letter at 2).

However, the Trump Parties' reliance on a sealing order

does not overcome the First Amendment presumption of access.

See In re September 11 Litig., 723 F. Supp. 2d at 532 (noting

that "the court must be skeptical" of claims that settlement

might not have occurred without a condition of confidentiality,

"for 'if the case goes to trial, even more is likely to be

disclosed'")(quoting Pansy v. Borough of Stoudsburg, 23 F.3d

772, 788 (3d Cir. 1994)(internal quotation marks omitted)).

When Hardy settled, the case had been pending for more than

fifteen years and had already been tried once and reversed,

necessitating a retrial.  See Hardy v. Kaszycki & Sons

Contractors, Inc., 870 F. Supp. 489, 491, 492-93 (S.D.N.Y.

1994)(comparing Hardy to the fictional and interminable legal

proceedings in Jarndyce v. Jarndyce).  The Trump Parties

previously represented to the Court that, after so many years of

litigation, the parties had reached "amicable terms" for settlement "without Court intervention" -- making clear that the Trump Parties did not rely on assurances of confidentiality on the part of the district court to reach a settlement. (See Letter from Lawrence Rosen, Aug. 12, 2016, ECF No. 420); United States v. Erie Cty., 763 F.3d 235, 243 (2d Cir. 2014)(rejecting argument that the First Amendment presumption of access was overcome by need for "frank, and hence confidential, discussions among the parties" because settlement of the case had "already been reached.").

Finally, the Trump Parties' reliance argument is particularly inapposite in the context of a class action settlement.  Under Rule 23(e), a court must hold a hearing in open court on the subject of the proposed settlement, and the motion for approval of the settlement must be filed publicly. See Glens Falls Newspapers, Inc., 160 F.3d at 857.  The Trump Parties cannot have a reliance interest in the confidentiality of the settlement agreement sufficient to overcome the First Amendment right of access where they were already required by the Federal Rules of Civil Procedure to disclose publicly the terms of the settlement agreement.

Accordingly, the Court finds no interests that can overcome the First Amendment presumption of access to the two court orders, the Settlement Transcript, and the plaintiffs' brief.

III. Common Law Balancing

Because the sealing of the records at issue cannot be justified under the First Amendment framework, the Court need not address the common law presumption of access.  However, even under this less stringent framework, the Court would find that all of the records at issue should be unsealed pursuant to the common law.

Under the common law, sealing must "be supported by specific findings" that "the interests favoring non-access outweigh those favoring access." Amodeo I, 44 F.3d at 148.  The burden is upon the parties opposing access "to demonstrate that the interests favoring non-access outweigh those favoring access." Id.

As described above, the Court of Appeals concluded that the weight of the common law presumption as applied to the two of court orders is of middling strength, and the Court has now found that the weight as applied to the Settlement Transcript and plaintiffs' brief is particularly strong.

The Trump Parties again rely on a generalized interest in promoting settlement and their reliance on the settlement's confidentiality as countervailing interests that outweigh the right of access under the common law.  (Trump Parties' Letter at 2).  However, the generalized interest in promoting settlement does not outweigh the public's common law right of access.  See

In re September 11, 723 F. Supp. 2d at 532; Bank of Amer. Nat'l Trust & Savings Ass'n, 800 F.2d at 346.

Furthermore, the Court does not find that reliance on the Court's sealing order is a sufficiently compelling countervailing interest where the parties did not rely on assurances of confidentiality by the Court in reaching a settlement. The Trump Parties cite LEAP Systems, Inc. v. MoneyTrax, Inc., 638 F.3d 216, 222 (3d Cir. 2011), a Third Circuit case stating that "LEAP's reliance on the District Court's assurances of confidentiality entirely reasonable and sufficient to outweigh the public's common law right of access." (Trump Parties' Letter at 2). However, LEAP Systems, Inc. also found that the district court's sealing order for settlement agreements was appropriate where the parties "would not have entered into the settlement agreements but for the Court's assurance of confidentiality." 638 F.3d at 222 (emphasis in original). As indicated above, supra at 14, the Trump Parties indicated that the parties were able to reach a settlement without relying on assurances from the Court that the settlement would remain confidential. Accordingly, LEAP Systems, Inc. provides no support for the assertion that the Trump Parties' reliance interest in confidentiality is sufficient to outweigh the common law presumption of access, even if it is only of

middling strength.  The Trump Parties cite no other precedent in support of their reliance argument.

IV.  Attorneys' Fees

The Trump Parties also request that if the Court decides to unseal any portion of the four documents at issue that it redact the amount that was paid to plaintiff's counsel in legal fees. (Trump Parties' Letter at 3).  They state, "those amounts are wholly irrelevant to the performance of the Court's Article III functions. . . ."

As discussed earlier, Rule 23(e) requires the district court to approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  A proposed settlement in a class action may include an amount to be paid in attorneys' fees.  Similar to other proposed terms and conditions of the settlement, a district court may not approve an award of attorneys' fees in a proposed class action settlement agreement that "exceed[s] what is 'reasonable' under the circumstances." Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (citing Brown v. Phillips Petroleum Co., 838 F.2d 451, 455 (10th Cir. 1988); Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999)).  "What constitutes a reasonable fee is properly committed to the sound discretion of the district

court." <u>Goldberger</u>, 209 F.3d at 47 (citing <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 172 (2d Cir. 1998)).

To make a determination as to what amount is "reasonable[] and reasonably necessary for the litigation" in awarding attorneys' fees, a district court may look to information that the party seeking the award of fees has provided, such as "1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations" in making a reasonableness determination. <u>Goldberger</u>, 209 F.3d at 50 (quoting <u>In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.</u>, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

Information relating to plaintiffs' attorneys' fees in the course of this litigation, including plaintiffs' attorney's qualifications, the type of work performed throughout the course of the litigation, and the rates that plaintiffs' lawyers charged constitutes a significant amount of the information in plaintiffs' brief.  The plaintiffs provided this information for the purpose of allowing the court to determine that the amount plaintiffs' attorneys sought in fees was "reasonable."

As discussed earlier, a court's review of a proposed settlement agreement in a class action invokes its Article III powers.  See <u>In re September 11 Litig.</u>, 723 F. Supp. 2d at 532-

33 (stating that a motion for approval of a settlement "invokes [the court's] Article III power").  Here, the court's review included an assessment of the amount that the plaintiffs and Trump Parties proposed be paid towards plaintiffs' attorneys' fees in connection with the settlement agreement.  Therefore, the information in the plaintiffs' brief and the Settlement Transcript pertaining to the amount that the Trump Parties paid to the plaintiffs' lawyers in legal fees is not "wholly irrelevant" to the Court's Article III powers.  The Trump Parties have not offered any other reason why such information should not be revealed in the event of unsealing, and therefore the Trump Parties' request to redact this information is denied.

   V.   Conclusion

   Movants' request to unseal (1) the Settlement Transcript (dkt. no. 409); (2) the plaintiffs' brief filed on November 9, 1998 (dkt. no. 410); (3) the district court order approving the settlement dated December 30, 1998 (dkt. no. 411); and (4) the amended district court order approving the settlement dated February 9, 1999 (dkt. no. 412) is GRANTED.

   The Clerk of Court is ORDERED to unseal (1) the Settlement Transcript (dkt. no. 409); (2) the plaintiffs' brief filed on November 9, 1998 (dkt. no. 410); (3) the district court order approving the settlement dated December 30, 1998 (dkt. no. 411);

and (4) the amended district court order approving the

settlement dated February 9, 1999 (dkt. no. 412).


    SO ORDERED.

Dated:    New York, New York
           November 21, 2017


                                      LORETTA A. PRESKA
                                      Senior United States District Judge