DOC # 444

CONFIDENTIAL/SUBJECT TO ORDER SEALING RECORD

#444

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOSEPH HARDY AND GUY HARDY,
etc., et. al.,

       Plaintiffs,

                                          83 Civ. 6346 (KTD)

  -against-

KASZYCKI & SONS CONTRACTORS, INC.,
et. al.,

       Defendants.

------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR APPROVAL OF SETTLEMENT AND ATTORNEYS' FEES

Plaintiffs submit this memorandaum and the accompanying Affidavit of Wendy E. Sloan, Esq. ("Sloan Affidavit") in support of their motion for the Court's approval of the settlement agreement reached and put on the record at the settlement conference with the Court conducted on October 26, 1998. A copy of the transcript of those proceedings, memorializing the terms of the settlement, is submitted to the Court with this application as Exhibit "A" to the Sloan Affidavit.

### 1. The Settlement Should Be Approved by the Court

Under the agreement, the Trump Defendants will pay a total of $ 1,375,000.000 to settle all of plaintiffs' claims against all

remaining defendants, that is, the Trump Defendants and Senyshyn,[1] including plaintiffs' claims for delinquent contributions to the Funds and plaintiffs' claims for attorneys' fees and costs of the action; and plaintiffs will divide the total to pay $500,000.00 to the Funds ($ 310,361.44 to the Pension Fund and $ 189,638.56 to the Insurance Trust Fund) and $875,000.00 in attorneys' fees.

As to the Funds' recovery, calculating the Funds' damages on the basis of the Second Circuit's analysis in <u>Diduck II</u> with respect to the Second Cause of Action, that is, taking March 24 (the date Local 95 began work on the job) as the starting date for damages, damages with interest calculated at the Funds' rate of return on investments from 1980 through the end of 1998 is $463,437.19. Consequently, as a result of the $500,000.00 allocated to the Funds, not only will the Funds be made whole under the Second Circuit's analysis, they will receive more than 100% of the loss which occurred because none of the defendants contributed to the Funds on behalf of the undocumented workers. <u>See:</u> Sloan Affidavit, paragraphs 23-38.

The settlement also resolves plaintiffs' claims against the defendants for attorneys' fees and costs. <u>See:</u> Sloan Affidavit, paragraphs 29-57. Defendants' payment of reasonable attorneys' fees and costs of the action is mandatory under Section

---

[1] In 1989, plaintiffs obtained a default judgment against defendants William Kaszycki and Kaszycki & Sons Contractors, Inc.. Consequently, the Kaszycki Defendants are not included in the proposed settlement. Subsequent discovery indicated that the judgment could not be collected against Kaszycki or his company, and Kaszycki has since died.

2

1132(g)(2)(D) of ERISA on the First Cause of Action (brought solely against the Trump Defendants). As to the Second Cause of Action, Judge Stewart awarded attorneys' fees and costs to plaintiffs pursuant to the discretionary fee-shifting provisions of ERISA Section 1132(g)(1), with the amount to be determined at a later date; 774 F.Supp. 802 at 815. In a "fee-shifting" case like this one, fees are calculated by the "lodestar" method of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424 (1983).

The attorneys' fees and costs provided for under the settlement are $875,000.00. This figure is less than 50% of counsels' actual fees and costs. As counsel advised the Court at the settlement conference, counsel had calculated their actual fees and costs as being in excess of that amount (and in excess of $1,600,000.00). Upon counsels' more detailed re-calculation in preparing this application, they have determined their actual fees and costs to be $2,092,888.00 ($1,834,713 for Hall & Sloan and $258,175 for Steel, Bellman, Ritz & Clark). Under the settlement, Hall & Sloan will receive $687,500.00 and Steel, Bellman, Ritz & Clark, P.C. will receive $187,500.00.

The extensive work performed by plaintiffs' counsel in connection with these protracted proceedings, their qualifications and experience, and the results achieved by this litigation are recounted in the Sloan Affidavit, paras. 10-20 and 32-57. The attorneys' fees and costs reimbursement provided for under the settlement are plainly reasonable. Indeed, counsel has agreed to

accept a substantial reduction in fees of over 50% in order to make this settlement possible.

The relevant factors in determining whether a class action settlement is fair and reasonable include whether the settlement was reached after genuine negotiation without collusion, the stage of the proceedings, the risks of establishing liability and damages, the complexity, expense, and likely duration of the litigation, and the reasonableness of the recovery. <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974 ("<u>Grinnell I</u>"); <u>Grant v. Bethlehem Steel Corp.</u>, 823 F.2d 20, 24 (2d Cir. 1987). Substantially the same criteria apply in determining, in derivative cases, whether the proposed settlement fairly and adequately serves the interests of the entity (here, the Funds) on whose behalf it was instituted, and its members (here, the Fund participants and beneficiaries). <u>Newberg On Class Actions</u>, Third Edition, Herbert Newberg & Alba Conte, Lawyers' Cooperative Publishing (1992), Section 22.103.

As set forth in detail in the Sloan Affidavit, analysis of these factors fully supports the conclusion that the proposed settlement is both fair and reasonable and in the best interests of the Funds and its participants.

This settlement is the result of vigorous, arms' length negotiation, as the Court no doubt observed during the settlement conference, and there is no question of collusion. <u>See:</u> Sloan Affidavit, paragraph 21. The representative plaintiffs, Joseph Hardy and Guy Hardy, receive no money at all under the settlement.

4

Rather, all damages recovered will be paid into the Pension and Insurance Funds in which the representative plaintiffs -- just like the class/derivative members -- are participants. The representative plaintiffs and all class/derivative members share a common concern as to the breaches of fiduciary duty and the recovery of Fund contributions from delinquent employers at issue in this case. Judges Stewart and Duffy accordingly found that the representative plaintiffs would serve to adequately represent the class and derivative interests in this case, and they have plainly done so in bringing this protracted and complex litigation to a successful end.

Plaintiff representatives Joseph Hardy and Guy Hardy are in agreement with the settlement's terms, which have been fully explained to each of them in separate conversations with their counsel, and they ask the Court to accept the settlement. Sloan Affidavit, para. 58.

This case has been litigated for fifteen years and has already required three rounds of discovery, extensive motion practice, a sixteen-day trial and two appeals. Further litigation would be extremely costly and time consuming. As the parties' pre-trial submissions, pending before the Court, establish -- including the Trump Defendants' sixty-one page Trial Memorandum and defendant Senyshyn's letter-memorandum, both dated October 2, 1998, and plaintiffs' letter-memoranda dated September 10 and October 16 -- the many open legal issues are complex. Without settlement, the case will very likely continue for years to come. Because

virtually all of the facts are contested, including every aspect of damages, there is the possibility of a lesser or no recovery after trial. Under the settlement, the Funds will be obtaining more than 100% of the result the Court of Appeals sanctioned in Diduck II as to the Second Cause of Action, namely: payment of full damages (that is, contributions to the Funds for the work performed by the undocumented Polish workers) calculated from the date the union began work on the Bonwit Teller demolition job, with single interest compounded annually. While higher awards are possible under the First Cause of Action, they would certainly be subject to challenge on appeal as they involve precedent-setting legal theories; therefore, any greater recovery is subject to considerable risk.

For all these reasons, as expounded in greater detail in the Sloan Affidavit, the proposed settlement is plainly fair and reasonable, and in the best interests of the Funds and their participants.

2. Notice to the Class/Derivative Members is Unnecessary and Should be Waived

Under the circumstances of this case, notice to the individual class and derivative members (that is, the Fund participants and beneficiaries) is unnecessary and may be waived by the Court in the exercise of its discretion.

The First Cause of Action is brought derivatively, on behalf of the Funds, by two representative Fund participants. As to what is now the Second Cause of Action, Judge Stewart certified a class

6

of "all persons who are, will be, or have been, at any time since January 1, 1980, participants in and/or beneficiaries of the Funds"; 737 F.Supp. 792, 799. On both causes of action, any recovery goes exclusively to the union's pension and welfare Funds: no individual plaintiff -- whether representative plaintiff or class/ derivative member -- can receive any monies in this case.

Therefore, in certifying the class, Judge Stewart held, Ibid.:

> "Moreover, since the action satisfies Rule 23(b)(1)(B) and is not maintained under Rule 23(b)(3), we agree with plaintiff that the notice and "opt-out" requirements of Rule 23(c)(2) are inapplicable. (footnote omitted). <u>Further, since any relief obtained will only accrue to the Funds, we believe that individual notice requirements to each class member are unnecessary.</u>"

Judge Stewart noted, Ibid., note 12, that while Rule 23(c)(2) requires notice and an opportunity to "opt out" in class actions maintained under Rule 23(b)(3), Rule 23(d)(2) leaves to the discretion of the court whether notice is required in actions brought under Rule 23's other provisions.

Consequently, no notice of this case has not been given to the class/derivative members at any previous stage of the proceedings.

Similarly, as to settlement under Rules 23(e) (regarding class actions) and 23.1 (regarding derivative claims), while court approval is necessary in all cases, notice to the class/derivative members is not. "The broad interpretation of the language that notice shall be given 'in such manner as the court directs'", as provided in Rules 23(e) and 23.1, permits the court to approve a

7

compromise without notice to the class "where no prejudice to the class members would result." <u>Newberg On Class Actions</u>, Third Edition, Section 8.18, at 8-59.

This is so because the purpose of Rule 23(e) is to discourage the use of the class action device by individual representative plaintiffs to obtain an unjust private settlement and to protect absent members against any prejudice by discontinuance. Similarly, the purpose of Rule 23.1 is to prevent "strike suits" or the "buying off" of representative plaintiffs at the expense of members participating in a common fund. <u>See:</u> <u>Newberg On Class Actions</u>, <u>Ibid.</u> Section 8.18. Accordingly, notice may be waived where, as here, these problems are absent from the case. These problems do not arise in this case, especially when the settlement contemplates an excellent recovery.

Whether court approval without notice is commensurate with the purposes of Rules 23(e) and 23.1 depends upon the circumstances of each case. <u>Ibid.</u> at 8-61 to 8-62. The court may approve a settlement without notice where -- as here -- no prejudice to the class/derivative members would result. <u>See:</u> <u>Newberg On Class Actions</u>, Section 8.18, at 8-590. If the court determines that settlement of the action will not benefit the individual representatives to the detriment of the class or otherwise prejudice those members, the court may dispense with notice. <u>Plaskow v. Peabody Int'l Corp.</u>, 95 FRD 297 (S.D.N.Y.1982) (Conner, J.) (derivative suit under Rule 23.1) (settlement approval granted without notice or hearing to shareholders because settlement

8

provided complete recovery, attorneys' fees were fair and reasonable, and recovery as small and would be depleted by notice and hearing costs); <u>Rosen, derivatively on behalf of Price Communications Corporation v. Price</u>, 1998 U.S.Dist. <u>LEXIS</u> 9198 (S.D.N.Y.) (Haight, J.) (finding case "appropriate" for "dispensing with notice to shareholders because their interests will not be substantially affected by the compromise" under which defendant paid $450,000 to Price Communications Corporation, not "an unreasonably low amount" for settlement of the claim); <u>Doe v. Perales</u>, 782 F.Supp. 201, 207 (W.D.N.Y. 1991) (in suit to enjoin New York officials from implementing changes in Medicaid program brought by class of elderly nursing home residents, notice to class unnecessary where settlement provided near complete relief and no monetary recovery was at issue).

Here, given the age of the case, the fact that no notice of these proceedings has been given to class members at any previous stage in the litigation, and the fact that no individual member or representative plaintiff will share in the recovery -- all of which will be paid to the Funds -- approval without notice to the individual members is appropriate.

Conclusion

For the reasons set forth hereinabove and in the accompanying Affidavit In Support of Settlement and Fees Approval, plaintiffs ask that the Court approve the proposed settlement herein, memorialized in the transcript of the settlement conference conducted before the Court on October 26, 1998, including the Trump

Defendants' payment of $1,375,000.00 to plaintiffs' counsel, Hall & Sloan, thirty days after court approval of the settlement, to be distributed by such counsel to pay $500,000.00 to the House Wreckers Union Local 95 Pension & Insurance Trust Funds (that is, $310,361.44 to the Pension Fund and $189,638.56 to the Insurance Trust Fund), retaining $875,000.00 as attorneys' fees and costs ($687,500.00 for Hall & Sloan and $187,500.00 for the firm of Steel, Bellman, Ritz & Clark).

Dated: November 9, 1998

Respectfully submitted,

Wendy E. Sloan (WES 7998)
Attorney for Plaintiffs
Hall & Sloan
351 Broadway  4th Floor
New York, N.Y. 10013
(212) 431-9114